IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Edgar Searcy, #04726-031,<br>aka Edgar Joe Searcy,<br><br>                Plaintiff,<br><br>vs.<br><br>NFN Skinner; United States; U.S. Attorney General; Director, Bureau of Prisons; Warden, Bennettsville FCI; Warden, Estill FCI; Federal Bureau of Prisons; Unknown Employees of U.S. Department of Health; Carlos Brownlee,<br><br>                Defendants. | Civil Action No. 6:07-3347-GRA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the federal defendants' motion for summary judgment, defendant Carlos Brownlee's motion to dismiss, and the plaintiff's motion for summary judgment. The plaintiff, who is proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On April 17, 2008, defendant Brownlee filed a motion to dismiss. By order filed on May 7, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. He filed his response on April 28, 2008. On June 26, 2008, the federal defendants filed a motion for summary judgment. By order filed on June 27, 2008, pursuant to *Roseboro*, 528 F.2d 309, the plaintiff was again advised

of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his opposition to the motion for summary judgment on July 17, 2008. The plaintiff filed his own motion for summary judgment on that same date, and the federal defendants filed their opposition on August 4, 2008.

## **FACTS PRESENTED**

The plaintiff was sentenced on December 4, 2003, to a 180-month term of imprisonment by the United States District Court for the Southern District of Florida, for Use of Interstate Commerce to Engage in a Sexual Activity with a Minor (18 U.S.C. § 2422(b)) (def. m.s.j., ex. 1, Sentence Monitoring Computation Data). He was incarcerated at the Federal Correctional Institution ("FCI") Bennettsville, South Carolina from November 15, 2005, through March 10, 2006. The plaintiff was then transferred to FCI Estill, South Carolina, until November 14, 2007. He is currently incarcerated at the Federal Correctional Complex ("FCC"), Petersburg, Virginia, and has a projected release date of June 25, 2016, via Good Conduct Time ("GCT") release (*id.*). The defendants in this action are the United States of America, the United States Attorney General, the Director of the Federal Bureau of Prisons, the Warden of FCI Bennettsville, the Warden of FCI Estill, the Federal Bureau of Prisons, and Unknown Employees of the U.S. Department of Health (collectively, the "federal defendants"); NFN Skinner, an inmate; and Carlos Brownlee, an inmate.

The plaintiff alleges that on or about December 1, 2005, he was assaulted by inmate Skinner at FCI Bennettsville. He claims the staff at FCI Bennettsville failed to protect him by having unsafe conditions, inadequate security, and failing to detect he had been assaulted until after the attack. He states he was assaulted again on August 18, 2007, while at FCI Estill. He claims the officer stepped outside the housing unit, which led to his assault by inmate Brownlee in the housing unit. He claims when a staff member

arrived to stop the assault, the staff member was unable to stop the assailant. He claims even when numerous staff arrived they failed to restrain the assailant. The plaintiff claims he did not receive adequate medical care after either assault. After the first assault, he alleges he was left in a cell where he bled for 36 hours and was not monitored throughout the evening. He claims after the second assault, instead of medical staff responding to the emergency, he was forced to walk to the medical department. He alleges he did not receive any medical care after the assault and was placed in a regular cell even though he could barely walk or stand and he needed a handicap cell. He claims the defendants' actions violated his Eighth Amendment rights and the statutory duty to safely house him while in prison.

The plaintiff seeks damages from the defendants in the amount of $9,999.99 for physical damages and mental anguish caused by the avoidable physical assaults. He also seeks an order of garnishment against the two inmates named in the lawsuit. He seeks reimbursement for filing fees associated with the assaults and declaratory relief to enforce the duties and obligations of the United States and agencies.

On August 18, 2007, the plaintiff was assaulted at FCI Estill by an inmate in the cardroom of his housing unit. The assault took place during the ten-minute period of controlled movement, and the officer assigned to the plaintiff's housing unit was monitoring inmate movement in front of the housing unit in accordance with post orders. As soon as the officer became aware of the assault, he responded immediately and attempted to restrain the assailant, but the assailant was able to get out from the grip of the officer. Other staff arrived, and the assailant was finally restrained. Both inmates were escorted to Health Services (def. m.s.j., ex. 5, 6).

The plaintiff was examined by Health Services staff, who determined his blood pressure, pulse, and respiration were within normal limits. During this exam, the plaintiff indicated his pain was four on the pain management scale, indicating he was experiencing

only discomfort. He was assessed with a contusion on the left side of his face, contusions and abrasions on his forehead, and mild swelling in his left eye. Based on the medical assessment, only minor first aid such as cleaning his abrasions and applying ointment on such areas, was administered to the plaintiff's injuries by the Physician's Assistant ("PA"). Medical staff also instructed the plaintiff to apply ice (a dry ice pack was provided to him by medical staff) to his contusions for the next 24 to 36 hours. Since the plaintiff was already receiving a mild pain reliever and anti-inflammatory medication (Motrin) for a previous condition, no additional medication was prescribed (def. m.s.j., ex. 5, 7 at p. 000006).

Subsequently, the plaintiff was escorted to the Special Housing Unit ("SHU") pending an investigation of the assault. The plaintiff was initially placed in an observation cell in SHU for approximately nine hours. The plaintiff was then assigned to a regular cell on the second floor of SHU. He was assigned to the cell by custody staff based on the availability of space, and because there was no medical documentation that indicated a medical need for him to be housed in a handicap cell or on first floor range. Furthermore, there was no medical indication that the plaintiff needed to be placed on a special diet or be allowed to have a cane or wheelchair. He had sick call available to him every day in SHU and could have utilized such if he was in such excruciating pain that he could not move from his bunk to his door to retrieve his food tray (def. m.s.j., ex. 5, 6, 7 at p. 000006).

On August 22, 2007, while the contract optometrist was at the institution, the plaintiff was seen by the specialist as a precautionary measure due to his past history of cataract problems in his left eye and the recent contusion he sustained in his left eye as a result of the assault. According to the evaluation, the optometrist noted a contusion due to blunt trauma due to the recent injury, but there were no holes, tears, or detachment in the plaintiff's retina. The optometrist noted he would see the plaintiff back in a year (def. m.s.j., ex. 7 at p. 000005).

On August 27, 2007, the plaintiff signed up for sick call for complaints unrelated to the assault. During this visit with medical staff, the plaintiff's vital signs were taken and found to be within normal limits. Also, medical documentation indicated no tenderness or palpable masses were observed. The plaintiff also reported he was not experiencing any pain (def. m.s.j., ex. 7 at p. 000005).

The plaintiff was seen again on September 3, 2007, when he signed up for sick call with a request to have his shoe inserts replaced. During this appointment, he reported pain in his temple when active, the inability to open his mouth wide, and pain when he bent or twisted. An examination revealed the plaintiff's vital signs were normal, and he was well oriented, coherent, and not in distress. The PA also noted the fact that the plaintiff had been observed standing at his cell door for 90 to 120 minutes at a time without sitting or lying on his bunk (def. m.s.j., ex. 7 at p. 000009).

On September 11, 2007, the plaintiff was seen again for complaints of pain in his temple, a sharp pain in his ribs, lower back pain, numbness to the right side of his face, and a painful jaw. During triage, the plaintiff noted his pain to be between one or two, which indicated he was only experiencing mild pain. The physical examination of the plaintiff revealed he was well oriented, coherent, and not in acute distress. An eye, ear, nose, and throat exam was also done which indicated everything was within normal limits. The plaintiff was assessed with lower back pain that was moderate, dull, and non-radiating pain. The PA also noted no gross deformities were seen. The plaintiff was prescribed another anti-inflammatory medication (Naproxen 500 mg) and instructed to apply hot compresses to the areas as tolerated. The plaintiff did not sign up for sick call again after this date prior to being transferred to another facility (def. m.s.j., ex. 7 at pp. 000011-015).

The next time the plaintiff was seen by medical was on October 18, 2007, in the Chronic Care Clinic. At this appointment, the PA noted the plaintiff's skin was clear of any abrasions. Records reflect the plaintiff was compliant with his medical regime and

5

"seemed happy." During this visit, the plaintiff did not complain that he was suffering from any type of pain associated with being assaulted on August 18, 2007 (def. m.s.j., ex. 7 at p. 000013).

During interviews with the plaintiff and the alleged assailant, it was determined the assault occurred as a result of the plaintiff's alleged theft of the assailant's radio (def. m.s.j., ex. 5, 6).

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

*Bivens*

The plaintiff states in his complaint that he is suing the defendants in their official and individual capacities pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971). In *Bivens*, the Supreme Court provided a remedy for money damages against individual federal agents for violation of a plaintiff's constitutional rights. *Id.* A suit against a federal agency or federal officer in his or her official capacity is actually a claim against the United States. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Such a suit lies only where the United States has waived sovereign immunity. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The United States has not waived its sovereign immunity for constitutional misconduct. *See id.* at 477-

78.  Accordingly, the doctrine of sovereign immunity shields the United States from suit absent its consent to be sued.  Therefore, this court lacks jurisdiction over the plaintiff's claims against the United States and the federal defendants in their official capacities. Further, defendants Skinner and Brownlee are federal prisoners and, clearly, a prisoner is not a federal official subject to suit pursuant to *Bivens.*

Furthermore, as to the allegations against the federal defendants in their individual capacities, the plaintiff has failed to allege or present evidence showing any personal involvement of the federal defendants in the alleged violations of his constitutional rights.  In a *Bivens* proceeding, liability is "personal, based upon each defendant's own constitutional violations."  *Trulock v. Freeh*, 275 F.2d 391, 402 (4th Cir. 2001).  Thus, in order to establish liability in a *Bivens* case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights.  *See Wright v. Smith*, 21 F.3d 496, 501 (2nd Cir. 1994).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.  *See Zatler v. Wainbright*, 802 F.2d 397, 401 (11th Cir.1986).  Further, "[i]n a *Bivens* suit, there is no respondeat superior liability." *Trulock*, 275 F.2d at 402 (citing  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)).

Here, the plaintiff does not allege any personal involvement on the part of the federal defendants.  It appears that the plaintiff named these defendants only in their official capacities as the Director of the BOP, the U.S. Attorney General, and the Wardens of FCI Bennettsville and FCI Estill.  As noted above, this court lacks jurisdiction over the plaintiff's claims against the United States and the federal defendants in their official capacities. Based upon the foregoing, the plaintiff's *Bivens* claim fails against all the defendants.

***FTCA***

To the extent the plaintiff's complaint states a claim under the Federal Tort Claims Act ("FTCA"), the proper defendant is the United States. *See* 28 U.S.C. § 2674 ("The United States shall be liable, ... relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). Title 28, United States Code, Section 1346(b), vests jurisdiction over FTCA claims in the district courts, but only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* § 1346(b). Clearly, a prisoner is not a proper defendant for a claim under the FTCA. Since the FTCA serves as a waiver of sovereign immunity, which must be strictly construed, this court is without subject matter jurisdiction to hear any tort claim against any defendant other than the United States. *Wood v. Standard Products Co., Inc.*, 671 F.2d 825, 829-30 (4th Cir. 1982). Accordingly, any FTCA claim against the defendants other than the United States should be dismissed.

A plaintiff must also exhaust administrative remedies prior to filing suit pursuant to the FTCA. This requires presenting an administrative claim to the agency involved. *See* 28 U.S.C. § 2675(a). The exhaustion requirement under the FTCA is jurisdictional and may not be waived. *Plyler v. United States*, 900 F.2d 41, 42 (4th Cir.1990). Where such a claim is not first presented to the appropriate agency, the district court must, pursuant to Federal Rule of Civil Procedure 12(b)(1), dismiss the action for want of subject matter jurisdiction. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (upholding dismissal of suit against Government where plaintiff had not exhausted available administrative remedies). The regulations for filing an administrative claim under the FTCA are codified at 28 C.F.R. § 14.1 *et seq*. The regulation pertaining to presentation states:

> For purposes of the provisions of 28 U.S.C. §§§ 2401(b), 2672,
> and 2675, a claim shall be deemed to have been presented

> when a Federal agency receives from a claimant, his duly authorized agent or legal representative, and executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

*See* 28 C.F.R. § 14.2(a).

The evidence before the court shows that the plaintiff filed an administrative tort claim with the Southeast Regional Office regarding his allegations that he was assaulted by another inmate on August 18, 2007, at FCI Estill and that he was not provided proper medical care after the assault (def. m.s.j., ex. 4, 5). However, the defendants presented the declaration of Tami Cassaro, the Supervisory Attorney for the South Carolina Consolidated Legal Center for the BOP, who testified that the plaintiff did not file a claim regarding the December 1, 2005, assault at FCI Bennettsville (def. m.s.j., ex. 3). Accordingly, this court lacks subject matter jurisdiction as to the allegations relating to the December 1, 2005, assault of the plaintiff while at FCI Bennettsville.

Under the FTCA, the court must determine whether the United States is subject to tort liability by applying the substantive law of the state where the act or omission occurred. 28 U.S.C. § 1346(b)(1). The plaintiff claims the United States failed to provide for his safety. In South Carolina, "[t]o establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000).

An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Rayfield v. South Carolina Department of Corrections*, 374 S.E.2d 910, 913 (S.C. Ct. App. 1988). In addition, in order

to show that a defendant owes a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect. *Id.* at 914. In the federal prison context, the duty of care owed by the Bureau of Prisons to federal prisoners ultimately is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule. *United States v. Muniz*, 374 U.S. 150, 164-65 (1963). Pursuant to Section 4042, prison officials have a specific duty to protect inmates placed in their care. 18 U.S.C. § 4042(a)(3). The duty owed under Section 4042 is that of "reasonable care." *See Johnson v. U.S. Government*, 258 F.Supp. 372, 376 (D. Va.1966) (Prison officials duty to keep prisoners entrusted to their care and custody safe is not absolute but only requires exercise of ordinary diligence under the circumstances.). A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed. *Horne v. Beason*, 331 S.E.2d 342, 344 (S.C. 1985). The damages allegedly sustained must be shown to have been proximately caused, i.e., causally connected, to the breach of duty in order to warrant a recovery. *Id*.

      Here, investigation into the plaintiff's claims revealed that on Saturday, August 18, 2007, he was assaulted by another inmate in the cardroom in his housing unit at FCI Estill. Staff observed the assailant and were temporarily able to restrain the assailant. Upon arrival of additional staff, the assailant was apprehended again. An investigation of the incident indicated the plaintiff was not assaulted because staff failed to protect him, but was attacked because the assailant believed the plaintiff stole his radio. The investigation showed at the time of the incident, the unit officer was following post orders to stand outside the housing unit during the ten-minute open inmate movement. As soon as staff learned that the plaintiff was being attacked, staff appropriately responded and stopped the attack. Further, there was no indication that the plaintiff's safety was endangered or that he needed special protection. Additionally, the plaintiff did not request

11

protective custody from the inmate who attacked him, and staff were not aware of alleged problems the plaintiff had with such inmate (def. m.s.j., ex. 5, 6).

The plaintiff also alleges that the United States failed to provide him reasonable medical care following the attack. In South Carolina, a plaintiff alleging a medical malpractice claim must proved by a preponderance of the evidence the following:

> (a)   The recognized and generally accepted standards, practices, and procedures in the community which would be exercised by competent physicians in the same speciality under similar circumstances;
>
> (b)   that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;
>
> (c)   that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
>
> (d)   that the plaintiff was injured.

*Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000) (internal citations omitted). Furthermore, a plaintiff must establish by expert testimony both the "standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health System, L.P.,* 613 S.E.2d 795, 799 (S.C. Ct. App. 2005) (citing *Gooding v. St. Francis Xavier Hosp.*, 487 S.E.2d 596, 599 (S.C. 1997)).

The evidence clearly shows the plaintiff received adequate and proper medical treatment within the proven standard of care for the contusions and abrasions he received on August 18, 2007. Although the plaintiff states in his lawsuit and in his administrative tort claim that he had to walk to the Health Services Department, there was no evidence that a wheelchair was needed to take the plaintiff to the Health Services Department. Upon arrival in medical at approximately 9:35 a.m., medical documentation

shows the plaintiff was examined by a PA who took the plaintiff's vital sign, including his blood pressure, contrary to the plaintiff's assertion he never received a physical examine and medical staff refused to take his blood pressure. Additionally, the plaintiff's medical record is void of any evidence that he suffered from the whole host of injuries he now claimed he sustained on August 18, 2007. As noted on the Injury Report, the plaintiff sustained contusions, abrasions, and swelling to the right eye. Minor first aid is all that was medically required for the injuries he sustained on that day. The plaintiff was seen by an optometrist as a precautionary measure on August 22, 2007. The optometrist did not find the plaintiff sustained any serious injury to his eye (def. m.s.j., ex. 5, 7 at pp. 000006-07).

As to any permanent injuries the plaintiff is now claiming he has as a result of the assault and the alleged inadequate medical care he received, there is no documentation that shows the plaintiff actually sustained any permanent injury as a result of either reason. Although the plaintiff complained during sick call about pain in his temple when active, the inability to open his mouth wide, pain when he bent or twisted, an examination done at that time indicated the plaintiff was not in acute distress. There was no need for an antibiotic or an x-ray at this time as alleged by the plaintiff in his complaint. The plaintiff signed up one more time for sick call a week later, with complaints of pain in his temple, a sharp pain in his ribs, lower back pain, numbness to the right side of his face, and a painful jaw. However, the medical record shows the plaintiff indicated his pain was mild, between one and two, and the medical assessment indicated only lower back pain. Again, there was no medical indication that the plaintiff needed antibiotics or an x-ray and the records are void that he even requested such. Medical staff gave the plaintiff another pain medication, and he did not complain after that date. As to the plaintiff's allegation in his complaint that he asked for a different pain reliever because the one he had been taking irritated his stomach to hurt, the record is void of such request. Lastly, a review of the plaintiff's psychology records does not indicate the plaintiff reported to psychology staff at

FCI Estill and FCC Petersburg that he was traumatized after the assault. The plaintiff's records are void of any documentation indicating he experienced confusion, depression, or paranoia (def. m.s.j., ex. 7 at pp. 000006-014, 000025-031).

Based upon the foregoing, the plaintiff has failed to show that the defendants failed to protect him when he was assaulted on August 18, 2007, or that they failed to provide him medical treatment after such assault. Accordingly, the plaintiff's FTCA claim should be dismissed.

*NFN Skinner*

Federal Rule of Civil Procedure 4(m) provides that unless a defendant is served within 120 days after the complaint is filed, this court is required to dismiss an action without prejudice as to that particular defendant or order that service be made within a specified time period. Fed.R.Civ.P. 4(m). Service in this case was authorized on March 21, 2008. The summons submitted by the plaintiff for defendant NFN Skinner was addressed to "Inmate Skinner, F.C.I. Bennettsville, 696 Muckerman Road, Bennettsville, SC 29512." The summons was returned unexecuted by the U.S. Marshals Service marked "Attempted Not Known ... No Inmate Skinner at Bennettsville. There is no way to track him w/o a first name ....." On May 27, 2008, this court issued an order giving the plaintiff through June 19, 2008, to provide a full name and more accurate address for defendant NFN Skinner. The plaintiff was advised that if he failed to provide the name and address within that time period, NFN Skinner would be dismissed as a defendant in this case for lack of prosecution. The plaintiff has failed to comply with this order, and defendant NFN Skinner still has not been served with the summons and complaint. Accordingly, NFN Skinner should be dismissed from this case for lack of prosecution.

*State Law Claims*

The court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims as it is recommended that summary judgment be granted on the federal claims against all defendants. *See* 28 U.S.C. § 1367(c).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the federal defendants' motion for summary judgment (doc. 50) and defendant Brownlee's motion to dismiss (doc. 29) be granted as to the federal claims. It is further recommended that the court decline to exercise supplemental jurisdiction over the plaintiff's state law claims. Additionally, defendant Skinner should be dismissed from this action because the plaintiff has failed to provide a proper address for this defendant for service. Furthermore, it is recommended that the plaintiff's motion for summary judgment (doc. 65) be denied. The pending nondispositive motions will be held in abeyance pending the district court's disposition of the dispositive motions. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

October 8, 2008

Greenville, South Carolina

15